NICHOLSON et ux. v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1902.)

No. 711.

PASSENGERS—INJURY WHILE ALIGHTING—EVIDENCE.

There is evidence to go to the jury on the question whether injury to the internal organs of a passenger was not caused by her fall, when thrown to the ground from the lower step of a car, by the negligent starting of the train, while she was alighting, though the distance to the ground was only two feet, she having been a woman 40 years old and of delicate health, the ground having been covered with stones, and she having struck in a sitting posture, and, in addition to the testimony of physicians that her condition might have been caused by a severe jar, she having testified that she received a severe jar, and that this was the cause of her injury.

In Error to the Circuit Court of the United States for the Northern Division of the District of Idaho.

W. W. Woods and J. H. Forney, for plaintiffs in error.
Stephens & Bunn, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The plaintiffs in error, Charles Nicholson and Mary E. Nicholson, his wife, brought an action against the Northern Pacific Railway Company, the defendant in error, to recover damages for injuries alleged to have been sustained by Mary E. Nicholson on January 28, 1899, through the negligence of the defendant in error in operating its railway train at the station of Manchester, in the state of Idaho. Mrs. Nicholson, at the time of the accident, was returning from Wallace to Manchester as a passenger on the train of the defendant in error. As the train approached Manchester, the conductor called out the name of the station, and the train then came to a standstill. Mrs. Nicholson proceeded to get out of the car and go down the car steps. While she was in the act of swinging herself to the ground, the train, without any warning or signal, started forward, causing her to fall upon the ground, whereby she received, as she alleges, internal injuries which have caused her great pain and suffering. It was shown that there was no platform at the station of Manchester, and no means of getting off the train other than by stepping or jumping from the car steps to the ground.

Testimony was introduced by the plaintiffs in error which tended to show that Mrs. Nicholson, while she had been a woman of delicate health and had been the subject of surgical operations, was, during the two years prior to the accident, in reasonably good health. She testified that when she fell she was "jarred dreadfully," and thought she had bones broken. She testified, further, and her evidence is corroborated, so far as such evidence can be corroborated, by that of her husband and others, that immediately after the accident she suffered very severe pains in the back and groins, and through the abdomen, and was so weak that she had to lie down, and was thereafter for two months under the treatment of a physician on account of the injury, and that she went to a hospital, where she remained 11 days, undergoing treatment, and that subsequently she was under the care of another physician, who performed an operation upon her, and that thereafter she submitted to another operation, all of which trouble, pain, and suffering she testifies was the result of the fall. Upon the close of the testimony, the court instructed the jury to find a verdict for the defendant in error. In so ruling, the court, according to the report of his oral instructions contained in the record, seems to have been moved by two considerations: First, that the evidence showed that Mrs. Nicholson had been in very delicate health for some years prior to the accident, and several years before had suffered miscarriages, and had submitted to surgical operations, concerning which and the nature of her ills the court remarked: "So it is to my mind utterly impossible that this distress that she may be in could have resulted from that accident." The second consideration was that the shock or injury which the plaintiff suffered could not, in the nature of things, have been severe, owing to the short distance which she fell. The court said: "She could not have had, when the car moved, more than one and a half to two feet at the outside to jump. Now, I cannot for a moment believe from my own observation and experience and from the testimony of physicians in cases like this that that kind of a fall could have injured her seriously. If so, four-fifths of the women in the United States would have the same trouble. * * * It could not have been possible that a little jump of that kind could have created the serious state of her health to which witnesses have testified." The court then referred to the testimony of physicians, and said: "They have said that a certain state of her organs testified to might have occurred from an accident, but they acknowledge that it would require a very severe accident."

We are unable to agree with the trial court that the case should have been taken from the jury. The negligence of the railway company was fully proven. It was shown that, after the train had come to a stop at Manchester, one of the passengers, a young lady who was acquainted with the conductor, called his attention to the fact that there was snow at the point where the train had stopped, and requested him to have the train moved further up, so that she might get out at a better place. The conductor, without looking to see whether other passengers were descending from the train, gave the signal to move the train forward, and it started, according to some

of the testimony, with quite a jerk, and proceeded a distance of 50 or 100 feet. Mrs. Nicholson, at the moment when the train started, was standing on the lowest step of the car. It is not disputed that she was thrown to the ground. The distance which she fell is not definitely shown. According to the evidence of the only witness who testified on the subject, the height of the lowest step from the ground was 25 or 30 inches; but, conceding that it was not more than 2 feet, as stated by the court, it is, in our judgment, quite conceivable that a woman over 40 years of age, falling that or even a less distance, and striking the earth in a sitting posture, as it has been testified Mrs. Nicholson fell, might receive a very severe shock. We do not think it would follow, as a conclusion to be deduced by a court, that a fall such as that might not have produced all the injuries of which Mrs. Nicholson complained. The testimony of the physicians was that the condition in which they found her internal organs might have been caused by a severe jar. The test of a carrier's liability in a case of this kind is not whether the accident, if it had occurred to one in robust health, would have resulted in a permanent or serious injury. The carrier is bound to carry, with due care, the weak, the blind, and the lame, and is responsible for the injuries which they sustain by reason of its negligence. It cannot wholly absolve itself from liability by proving that the injured passenger was in delicate health or diseased before the accident. It is true the plaintiff in such an accident must make out his case. He must show with reasonable certainty that the injury which he suffered resulted from the negligence complained of. Mrs. Nicholson testified that she received a severe jar, and that that was the cause of her injury. The physicians testified that the condition in which she was might have resulted from a severe jar. The photographs of the place where she fell show that the ground was considerably lower than the track, and that it was covered with stones and boulders. According to some of the witnesses there were from two to seven feet of snow on the ground, and according to others there were but a few inches. Wholly aside from the testimony of the physicians and the question whether the serious condition in which they found Mrs. Nicholson's organs was attributable to her fall, there was her own direct and positive testimony as to her acute and long-continued pain and suffering, which she declared was the result of the accident, and for which, if the jury found her evidence true, damages were recoverable under the pleadings. We think the court erred in ruling that there was no evidence to go to the jury.

The judgment will be reversed, and the cause remanded for a new trial.